# EXHIBIT E

Matthew J. Morrison (14562)
Morrison Legal Solutions
1887 N 270 E
Orem UT 84057
(801) 845-2581
matt@oremlawoffice.com

*Attorney for Plaintiff and all others similarly situated*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KENNETH JOHANSEN and JAMES EVERETT SHELTON, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SENTINEL SECURITY LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:21-cv-00021-JCB |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiffs Kenneth Johansen and James Everett Shelton ("Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public

outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Mr. Shelton alleges that Sentinel Security Life Insurance Co. ("Sentinel") commissioned automated telemarketing calls to his cellular telephone number and to other putative class members without their prior express written consent.

3.     Mr. Johansen alleges that Sentinel commissioned automated telemarketing calls to his number on the National Do Not Call Registry and to other putative class members without their prior express written consent.

4.     The Plaintiffs and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, The Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Sentinel.

5.     A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.     Plaintiff Kenneth Johansen is an Ohio resident.

7.     Plaintiff James Everett Shelton is a Pennsylvania resident.

8.     Defendant Sentinel Security Life Insurance Co. is a Utah corporation with its principal place of business in Salt Lake City, Utah.

**Jurisdiction & Venue**

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over Sentinel because it is incorporated and has its principal place of business in the State of Utah.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in the State of Utah.

### TCPA Background

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

### The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones and Numbers Charged Per Call

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

3

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call. *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

4

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The National Do Not Call Registry</u>

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

19. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

<u>The Growing Problem of Automated Telemarketing</u>

20. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

21. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

5

consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

22. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

23. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7- billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

24. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

25. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018.

6

*Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

**Factual Allegations**

<u>Calls to Mr. Shelton</u>

26. Plaintiff Shelton is a "person" as defined by 47 U.S.C. § 153(39).

27. Mr. Shelton's telephone number, (484) 626-XXXX, is assigned to a cellular telephone service.

28. On October 1, 2020, Mr. Shelton received a telemarketing call on behalf of Sentinel on his cellular telephone.

29. The calls were made with an ATDS, as that term is defined by the TCPA.

30. The Plaintiff knew the call were made with an ATDS because:

    a.    The call was commercial in nature; and

    b.    Before the call connected with a live individual there was a distinctive "bloop" sound, associated with an automated dialer, followed by hold music.

31. To identify an actual company, Mr. Shelton engaged with the telemarketer.

32. Sentinel's insurance products were offered on the call.

33. Mr. Shelton was then transferred to a licensed insurance agent Sherry Fouad who, at the time, was licensed in Pennsylvania only to sell Sentinel insurance products, and who continued to offer Mr. Shelton Sentinel's insurance products.

34. Ms. Fouad also provided a contact telephone number and address for Sentinel in Utah in connection with the solicitation.

<u>Calls to Mr. Johansen</u>

35. Plaintiff Johansen is a "person" as defined by 47 U.S.C. § 153(39).

36. Mr. Johansen's telephone number, (614) XXX-1037, had been on the National Do Not Call Registry for more than a year prior to the calls at issue.

37. Mr. Johansen's telephone number, (614) XXX-1037, was and is used for residential purposes only, and is not associated with any business.

38. Twice on November 24, 2020, and on November 25, November 28, December 2, and December 28, 2020, Mr. Johansen received telemarketing calls on behalf of Sentinel.

39. On the two November 24 calls and the November 28 call, a telemarketing sales representative came on the line from a company called "American Care Benefits" to prescreen Mr. Johansen for Sentinel's products, and then told Mr. Johansen that licensed insurance agent "Robert" would call him.

40. On November 25 and December 2, Mr. Johansen received calls from Robert Walls of "Plan4Life" offering Sentinel's insurance products.

41. On December 28, Mr. Johansen received a call from Robert Funes offering Sentinel's insurance products.

42. Mr. Johansen was then transferred to a licensed insurance agent Sherry Fouad who continued to offer Mr. Johansen Sentinel's insurance products.

43. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because their phone lines were tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class members.

8

**Sentinel's Liability for Ms. Fouad's and Mr. Walls's Conduct**

44.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46.     In fact, the Federal Communication Commission has instructed that sellers such as Sentinel may not avoid liability by outsourcing telemarketing to third parties, such as the co-defendants:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

47.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

9

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

48. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

49. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

50. Ms. Fouad and Mr. Walls are Sentinel licensed agents.

51. Sentinel is liable for the telemarketing calls that were initiated by or on their behalf.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

52. Sentinel hired Ms. Fouad and Mr. Walls to originate new business using automated telemarketing calls.

53. Sentinel could have restricted Ms. Fouad and Mr. Walls from using automated telemarketing or telemarketing to numbers on the National Do Not Call Registry, but it did not.

54. Sentinel also accepted the benefits of Ms. Fouad's and Mr. Walls's illegal telemarketing by servicing insurance contracts entered into by Ms. Fouad and Mr. Walls on behalf of Sentinel despite the fact that those insurance contracts were generated through illegal telemarketing.

55. Sentinel permitted Ms. Fouad and Mr. Walls to place calls using Sentinel's name and to bind Sentinel to insurance conracts.

56. Sentinel had absolute control over whether, and under what circumstances, it would accept a customer.

57. Sentinel determined the parameters and qualifications for customers to be sold insurance products and required Ms. Fouad and Mr. Walls to adhere to those requirements.

58. Sentinel knew (or reasonably should have known) that Ms. Fouad and Mr. Walls were violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads and sales from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

59. By having Ms. Fouad and Mr. Walls initiate the calls on its behalf to generate new business, Sentinel "manifest[ed] assent to another person . . . that the agent shall act on the

11

principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

60. Ms. Fouad and Mr. Walls transferred customer information directly to Sentinel. Thus, the companies that Sentinel hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

61. Ms. Fouad and Mr. Walls also had the right to bind Sentinel in contract, a hallmark of agency.

62. Sentinel was on prior knowledge of its agents' illegal calling conduct, as Mr. Johansen had previously complained to Sentinel about telemarketing calls made by its licensed insurance agents.

63. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

64. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

65. The Classes of persons Plaintiffs propose to represent is tentatively defined as:

<u>National Do Not Call Registry Class</u>

> All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12 month period; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for more than 31 days prior to the first call; (d) promoting the goods or services of the Defendant; (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

Automated Call Class

> All persons within the United States to whom: (a) Defendant and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

66. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendant has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

67. The Classes as defined above are identifiable through phone records and phone number databases.

68. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

69. Plaintiff Johansen is a member of the National Do Not Call Registry Class.

70. Plaintiff Shelton is a member of the Automated Call Class.

71. There are questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated calls to contact putative class members' cellular telephones;

13

b. Whether Defendant's agent(s) initiated calls without obtaining the recipients' prior express invitation or permission for the call;

c. Whether Sentinel is vicariously liable for the telemarketing conduct of its agent(s); and

d. Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendant's actions.

72. Plaintiffs' claims are typical of the claims of class members.

73. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

74. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

75. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

76. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Do Not Call provisions

14

77. Plaintiff Johansen incorporates the allegations from all previous paragraphs as if fully set forth herein.

78. Defendant violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

79. The Defendant's violations were negligent and/or willful.

### Count Two:
### Violation of the TCPA's Automated Call provisions

80. Plaintiff Shelton incorporates the allegations from all previous paragraphs as if fully set forth herein.

81. The Defendant violated the TCPA by (a) initiating automated telephone solicitations to telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

82. The Defendant's violations were willful and/or knowing.

83. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Relief Sought

WHEREFORE, for themselves and all class members, Plaintiffs request the following relief:

15

A. Injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B. Because of Defendant's violations of the TCPA, Plaintiffs seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5).

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiffs are proper representatives of their respective Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E. Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Dated: January 12, 2021

Plaintiff,
By Counsel,

/s/
Matthew J. Morrison (14562)
Morrison Law
1570 N. Main St.
Spanish Fork, UT 84660
(801) 845-2581
matt@oremlawoffice.com

Anthony I. Paronich (*pro hac vice* forthcoming)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043

16

508.221.1510
E-mail: anthony@paronichlaw.com

Avi R. Kaufman (*pro hac vice* forthcoming)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

17