**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES E. SHELTON, on behalf of himself
and others similarly situated,

        Plaintiff,

v.

FREEDOM FOREVER, LLC

        Defendant.

Case No. 2:24-cv-04333-GJP

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO DISMISS AND TO TRANSFER**

**Contents**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 1

BACKGROUND ............................................................................................................ 3

ARGUMENT ................................................................................................................. 4

    a.    The Jumara private factors favor Mr. Shelton and counsel against transfer. ....................... 4

    b.    The *Jumara* public factors favor Pennsylvania and counsel against transfer. .................. 11

    c.    The demand for attorneys' fees is not improper and should not be dismissed. ................ 14

CONCLUSION ............................................................................................................. 16

CERTIFICATE OF SERVICE ..................................................................................... 17

## Table of Authorities

### CASES

*Aguarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441 (E.D. Pa. 1973) ............................................................................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 3

*Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356 (E.D. Pa. 2017) ............. 15

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ......................................... 2

*Cordell v. Greene Fin. Co. of Georgetown, Ga.*, 892 F. Supp. 1396 (M.D. Ala. 1995) ............... 8

*Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 WL 1560212 (N.D. Ill. May 29, 2007) ............................................................................. 8

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp.*, Inc., No. CIV.A. 2:13-05805 JL, 2014 WL 1555133 (D.N.J. Apr. 14, 2014) ...................................................................... 11

*Gallagher v. Ocular Therapeutix, Inc.*, No. CV175011SDWLDW, 2017 WL 4882487 (D.N.J. Oct. 27, 2017) ........................................................................................................... 5

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) .............................................................. 1

*In re Nissan Motor Corp. Antitrust Litig.*, 352 F. Supp. 960 (J.P.M.L. 1973) ..................... 7

*Job Haines Home for the Aged v. Young*, 936 F. Supp. 223 (D.N.J. 1996) .......................... 6

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995) ............................... passim

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) ............................................ 12

*Lary v. Drs. Answer, LLC*, No. CV-12-S-3510-NE, 2013 WL 987879 (N.D. Ala. Mar. 8, 2013). 8

*LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574 (D.N.J. 2001) ................. 13, 14

*Meredith v. Unifund CCR Partners*, No. 2:08-CV-375-MEF, 2008 WL 4767523 (M.D. Ala. Oct. 29, 2008) ........................................................................................................... 8

*National Paintball Supply, Inc. v. Cossio*, 996 F. Supp 459 (E.D. Pa. 1998) ..................... 4

*Neff v. Towbin Dodge LLC*, No. 220CV00261JAMDMC, 2020 WL 6802188 (E.D. Cal. Nov. 19, 2020) ................................................................................................................. 8

*Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325, 2016 WL 7380708 (E.D. Pa. Dec. 19, 2016) ................................................................................................................. 15

*Santiago v. Merriman River Assocs., LLC*, No. 3:17-CV-2054-VAB, 2018 WL 2465358 (D. Conn. June 1, 2018) .............................................................................................. 16

*Smith v. HireRight Sols., Inc.*, No. CIV.A. 09-6007, 2010 WL 2270541 (E.D. Pa. June 7, 2010) 9

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ................................................................. 5

*Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11–1464, 2011 WL 5869602 (D.N.J. Nov. 22, 2011) ........................................................................................................................ 8

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-CV-253, 2012 WL 4074620 (W.D. Mich. June 21, 2012) ................................................................................................................. 8

*Virag, S.R.L. v. Sony Computer Ent. Am. LLC*, No. CIV. 14-4786 KM, 2015 WL 1469745 (D.N.J. Mar. 30, 2015) ................................................................................................... 7, 10

*York Paper Co. v. Hollinger Int'l, Inc.*, No. CIV.A. 03-CV-687, 2003 WL 21295001 (E.D. Pa. Apr. 22, 2003) .................................................................................................................. 4

<u>STATUTES</u>

FED. R. CIV. P. 12(b)(6) ............................................................................................................... 2

FED. R. CIV. P. 8 ......................................................................................................................... 2

<u>OTHER AUTHORITIES</u>

*Comparison of Districts*, ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, June 30, 2024 ......................................................................................................................... 13

## INTRODUCTION

Defendants that robocall consumers without consent in Pennsylvania should expect to be called into court in Pennsylvania. That includes Freedom Forever, who sent numerous communications to James E. Shelton, a Pennsylvania resident, multiple times to offer him solar services he did not want. Mr. Shelton's disinterest was not a secret. He listed his number on the National Do-Not-Call Registry to stop telemarketers like Freedom Forever from calling or texting him. He specifically asked Freedom Forever to refrain from doing so. But Freedom Forever did not comply with the Registry nor honor Mr. Shelton's Do Not Call request.

Because the calls were made unlawfully and after Mr. Shelton asked that they stop, Mr. Shelton sued Freedom Forever in this putative class action under the TCPA. He chose this venue because the Court has specific jurisdiction over Freedom Forever, Freedom Forever sells and installs solar panels and maintains offices near here, and it robocalled Mr. Shelton here. Freedom Forever does not dispute these facts or their legal effect. Even so, Freedom Forever wants to transfer this case to California because it would be more "convenient" for Freedom Forever. And, apropos of Freedom Forever's motion to dismiss Plaintiff's claim for attorney's fees, if a class is certified, the Plaintiff's counsel, as well as that of the class, would unquestionably be entitled to their attorneys' fees, so that motion must be denied as well.

For the following reasons, the Defendant's motion should be denied in total.

## LEGAL STANDARD

A district court may, in the interest of justice, "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving for transfer bears the heavy burden of demonstrating that transfer is proper since the plaintiff's choice of forum is entitled to great weight and will rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879–80 (3d Cir.

1

1995), the Third Circuit articulated six private and six public factors that a Court must weigh in determining if transfer is appropriate. They are reproduced below:

| *Jumara* Private Factors | *Jumara* Public Factors |
| --- | --- |
| Plaintiff's forum preference. | Enforceability of a judgment. |
| Defendant's forum preference. | Practical trial considerations. |
| Where the claim arose. | Administrative difficulty and caseload. |
| Convenience of parties. | Local interests in local controversies. |
| Convenience of witnesses. | Public policies of forum. |
| Location of books and records. | Familiarity with state law. |

In deciding whether to transfer this action, this Court must first examine whether the statutory prerequisite that the transferee court is one in which the action "might have been brought" is satisfied. *Id.* at 879. If it is, as it concededly is here, the Court must then consider the *Jumara* public and private factors to evaluate whether the transfer is in the interests of justice and would serve the convenience of parties and witness. *Id.*

And the standard for a Motion to Dismiss under Rule 12(b)(6) is also well-established before this Court. Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 () (cleaned up).

## BACKGROUND

Freedom Forever is a solar installation company operating nationwide, including in Pennsylvania, and has regional offices in Moorestown, New Jersey. Freedom Forever is licensed as a Pennsylvania home improvement and electrical contractor. To solicit business, Freedom Forever relies on telemarketing, and also engages in marketing through a subsidiary in Massachusetts, Boundless, Inc. In so doing, Freedom Forever accepts duties it must comply with under the TCPA, including the Act's National Do-Not-Call Registry and restrictions on calling individuals who have requested not to be called. Freedom Forever does not comply with these duties, leading them to violate the TCPA on a classwide scale. Of relevance here, Mr. Shelton listed his number on the National DNC Registry because he did not want to receive telemarketing calls. Despite that, he received communications from Freedom Forever, which he asked not to receive. Freedom Forever nevertheless continued to contact Mr. Shelton.

As a result, Mr. Shelton sued Freedom Forever under the TCPA. That included two counts: one National DNC claim and one for failing to honor his company-specific Do Not Call request. Given Freedom Forever's misconduct, Mr. Shelton alleged its violations were negligent, willful, or knowing. And, given that this matter is proceeding as a class action, Mr. Shelton included a prayer for relief seeking reasonable attorneys fees, to be paid, as permitted by law, out of a common fund of any class settlement or judgment.

To support its transfer motion, Freedom Forever makes much about the fact that it is headquartered in California while minimizing the scope of its regionalized calling conduct, including its maintenance of an office in Moorestown that would have serviced the Plaintiff, as well as its relationship with its subsidiary Boundless, which is located in Massachusetts.

Critically, Freedom Forever omits from its motion that, as a result, additional, if not more, discoverable records, as well as the parties and indeed most of the putative class members are liable to be concentrated along the Eastern Seaboard, including in Massachusetts, New Jersey, and Pennsylvania. In any event, even accepting Freedom Forever's contentions as true, it fails to satisfy its heavy burden in satisfying the aforementioned *Jumara* factors such as to justify transfer of this action clear across the country to California.

Nor does it claim that any documents are physical, rather than digital, or why emailing them from California to attorneys in Pennsylvania would be less "convenient" if the case were transferred there. It also ignores the fact that the Plaintiff was injured here, along which what is likely a majority of other class members. It also neglects to mention how transfer of this action to the Central District of California, one of the most clogged and procedurally esoteric jurisdictions in the country, will actually cause both parties' costs to skyrocket, to say nothing of additional burden and expense imposed and expected to be borne by Plaintiff. That's the exact opposite of convenience and justice. In short, although some events might have happened in California, nothing suggests that the litigation must proceed there for those purposes as required for transfer.

**ARGUMENT**
### a. The Jumara private factors favor Mr. Shelton and counsel against transfer.

The burden is on Freedom Forever to justify a transfer, and that burden is "heavy." *York Paper Co. v. Hollinger Int'l, Inc.*, No. CIV.A. 03-CV-687, 2003 WL 21295001, at *1 (E.D. Pa. Apr. 22, 2003). The plaintiff's choice of venue is "a paramount consideration," afforded less weight only if he selects a forum which is neither his home nor the location of the occurrence upon which the suit is based. *National Paintball Supply, Inc. v. Cossio*, 996 F. Supp 459, 462 (E.D. Pa. 1998). Because this Court has jurisdiction and venue is appropriate, Freedom Forever has not met its burden of justifying transfer, let alone its "heavy" burden for doing so,

particularly in light of the Plaintiff's choice of venue. Transfer is not warranted if it "would merely shift the inconvenience from the defendant to the plaintiff." *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441, 446 (E.D. Pa. 1973). That being the case here, and the balance of the *Jumara* public and private factors weighing in favor of Mr. Shelton and against transfer, this case ought not to be transferred.

The six *Jumara* private factors govern whether a Court should transfer venue, as outlined above. On balance, those factors favor Mr. Shelton, not Freedom Forever.

The first *Jumara* factor, the Plaintiff's forum preference, tips unquestionably in favor of the Plaintiff. As the Third Circuit outlined in *Jumara*, the plaintiff's choice of forum is entitled to great weight and will rarely be disturbed. *Jumara*, 55 F.3d at 879. In light of this fact, this Court must engage in a careful fact-specific inquiry that considers whether the litigation in the plaintiff's proposed forum would be more convenient to the parties and best serve the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Mr. Shelton's choice of forum is entitled to considerable weight. And while courts hold that this weight is "diminished" in a class action, it is not eliminated, as Freedom Forever seems to make out in its motion. *See, e.g.*, *Gallagher v. Ocular Therapeutix, Inc.*, No. CV175011SDWLDW, 2017 WL 4882487, at *4 (D.N.J. Oct. 27, 2017) (collecting cases). The analysis instead turns on how plaintiff and the facts connect to the forum, especially in light of whether the plaintiff is but one member of a class of individuals who all could have filed in their respective districts. *Id.*

And here, Freedom Forever does not contest this controversy's connection with the forum. It points to no putative class members even potentially residing in California. That fact is unsurprising, because the Plaintiff was contacted out of what appears to be a regionalized, not a nationalized, campaign. What's more, discovery is likely to reveal that the messages Plaintiff

5

received were made as part of a regionalized, as opposed to nationalized, calling campaign seeking to re-target individuals and with Freedom Forever's marketing subsidiary, Boundless, Inc., which is located in Massachusetts. Freedom Forever also maintains regionalized offices across the river in Moorestown. If anything, these facts alone greatly diminish the Defendant's own preference because at least some of the evidence here is likely to be located in Massachusetts and Moorestown, which are further from California than even Pennsylvania is. And, as such, the location of the class members and class representative is not a "mere happenstance." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996). This is not to mention that Mr. Shelton received Freedom Forever's calls and text messages here and suffered the harm they caused here. Thus, although diminished, the Court should find that the first *Jumara* factor still greatly favors Mr. Shelton.

And although the complementary *Jumara* factor, the Defendant's forum preference, will almost always tip in favor of the Defendant, the Defendant has not made the corresponding showing that it should outweigh the Plaintiff's forum preference here. Other that a handful of witnesses and electronic documents maintained in California, it points to no other reasons why California has an interest in this dispute or why its choice of proceeding there should be deemed anything other than seeking to litigate with a home field advantage. In any event, California does not have nearly the substantial connections with the pending claims that the Defendant makes out. Although the Defendant admittedly does have offices in California, the Defendant *also* has offices in Moorestown, New Jersey, just across the river from Philadelphia. Had the Plaintiff actually responded to the Defendant's advertisement, it likely would have dispatched a salesman from *that office*, and not sent a salesman from clear across the country to market and ultimately attempt to sell solar panels. *Contra Virag, S.R.L. v. Sony Computer Ent. Am. LLC*, No. CIV. 14-

4786 KM, 2015 WL 1469745, at *6 (D.N.J. Mar. 30, 2015) (holding that because that marketing activities occurred in California, this factor tipped in favor of transfer). And, just as importantly, Boundless, Inc., a subsidiary with at least some knowledge of the calling conduct at issue here, is located in *Massachusetts*, not California, and thus would be even more difficult to obtain relevant evidence from in the event that this case was transferred to California.

In sum, then, the two *Jumara* private preference factors do not entirely discount the Plaintiff's choice of forum; to the contrary, the counsel in favor of it. This case is unlike the other cases cited by the Defendant where classwide conduct was committed on a *nationwide* basis. Here, evidence exists that should at least defer consideration of the transfer question until some threshold discovery is done. Not least among these reasons are the involvement of a subsidiary located in Massachusetts as well as the apparently regionalized nature of Freedom Forever's marketing conduct, including a state-specific webpage it created for Pennsylvania residents. Thus, unlike a nationalized calling campaign, where a class member, presumably in any district in the United States could file this case, the case at bar bears indicia of regionalized calling conduct, which means that the potential class plaintiffs are not scattered across the country; rather, they are concentrated along the Eastern Seaboard. *See, e.g.*, *In re Nissan Motor Corp. Antitrust Litig.*, 352 F. Supp. 960, 961 (J.P.M.L. 1973) ("And although Los Angeles is Nissan's corporate headquarters and some of its documents are located there, no document depository has been established there and relevant documents are also located in the various regional headquarters of Nissan throughout the United States.").

Third, the claim arose in Pennsylvania, not California. Defendant does not even address this factor apart from brushing it off as neutral, and therefore has conceded it. "The third private factor . . . may be best understood as a consideration of which forum constitutes the 'center of

7

gravity' of the dispute, its events, and transactions." *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11–1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011). The wealth of TCPA case law is in agreement that the proper venue for a TCPA case is the district where the call was *received*. This is because the *injury* occurs where the call is *received*, not where it is sent. *E.g.*, *Lary v. Drs. Answer, LLC*, No. CV-12-S-3510-NE, 2013 WL 987879, at *4 (N.D. Ala. Mar. 8, 2013) ("District courts from other circuits have denied motions to dismiss or transfer private TCPA enforcement actions from the states where the plaintiffs received the offending communications to the states from which the communications were sent."); *Neff v. Towbin Dodge LLC*, No. 220CV00261JAMDMC, 2020 WL 6802188, at *2 (E.D. Cal. Nov. 19, 2020) ("Because Plaintiff's injury, receipt of the communications, occurred in the Eastern District, a substantial part of the events giving rise to his claim occurred here.").

Courts in this Circuit have considered the third factor, where the claim arose, to be the "most critical to the Court's analysis." *Travelodge Hotels*, 2011 WL 5869602, at *5. For purposes here, the injury occurred where the Plaintiff's cell phone, registered and with an area code in this District, was sent a message while the Plaintiff resided in this District. A wealth of similar TCPA and consumer privacy cases counsel against transfer on this basis alone. *E.g.*, *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-CV-253, 2012 WL 4074620, at *10 (W.D. Mich. June 21, 2012); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 WL 1560212, at *5 (N.D. Ill. May 29, 2007); *Meredith v. Unifund CCR Partners*, No. 2:08-CV-375-MEF, 2008 WL 4767523, at *3 (M.D. Ala. Oct. 29, 2008); *Cordell v. Greene Fin. Co. of Georgetown, Ga.*, 892 F. Supp. 1396, 1400 (M.D. Ala. 1995).

Fourth and Fifth, the convenience of the parties and witnesses also counsel in favor of this matter remaining in Pennsylvania. Although the convenience factors may be somewhat

8

diminished in a class action, this is not the case here. *Jumara* counsels that convenience should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Transferring the case to California would not affect that exchange or eliminate any "inconvenience." Indeed, although some witnesses and the Defendant are located in California, the Defendant also maintains a regional office in Moorestown, where other witnesses will be located. The Defendant's subsidiary, which likely had some degree of involvement in the calls and failure to record the Plaintiff's and other class members' do not call requests, is located in Massachusetts and will also require witness appearances. The messages took place for what appears to be a regionalized calling campaign. The Plaintiff received the messages in Pennsylvania, not California. Moreover, it is likely that the Moorestown office, not the California office, would have serviced the Plaintiff's marketing and purchase had he actually expressed interest and inquired as to the solar services being sold. In sum, there is at the very least an equal concentration of parties and witnesses on both coasts, which makes it just as convenient to litigate this matter here. In fact, convenience would likely be *better* served by organizing everything in Pennsylvania, owing to the proximity of the Defendant's office in Moorestown, Defendant's subsidiary in Massachusetts, and regionalized putative class members here, as opposed to potentially no such class members in California.

The other class members here are also likely to be concentrated closer to Pennsylvania than California or even spread across the country, unlike in *Smith v. HireRight Sols., Inc.*, No. CIV.A. 09-6007, 2010 WL 2270541, at *6 (E.D. Pa. June 7, 2010). Indeed, Pennsylvania is a more centrally located forum here to most of the class members, a factor which would help class member participation. Thus, the Plaintiff's similar complaints in other jurisdictions count for little because this case is unique in that it has both more moving parts than the other cases cited

as well as a concentration of individuals closer to Pennsylvania than California in any event. Far from diluting any convenience argument made by the Plaintiff, convenience actually favors permitting this matter to remain here given the relative concentration of parties and witnesses, unlike in the other cases cited. And the Plaintiff has not "actively litigated" in the Central District of California, as Defendant suggests; rather, the Plaintiff is a judgment enforcement professional that purchased a judgment in New York, commenced enforcement actions through counsel against the debtor, and subsequently settled the case, necessitating the filing of a satisfaction to release liens on property the debtor owned in California.

The fourth and fifth *Jumara* factors are also driven by monetary considerations and each party's respective financial position. *Virag, S.R.L.*, 2015 WL 1469745, at *6 (D.N.J. Mar. 30, 2015). Here, the Plaintiff is represented by a capable and experienced class action attorney that has the resources to litigate this case, but those resources are miniscule compared to the Defendant, a nationwide solar company with significant financial resources at its disposal, including that of an All-American college basketball player turned attorney. The Plaintiff is an individual of modest means without an extensive corporate travel planning network. The Defendant is a large, nationwide corporation with hundreds of employees, and thus can better manage any increased travel or litigation costs as a result of litigating here. *Id.* Indeed, as will be explained below, proceeding in the Central District of California will cause both parties' costs to skyrocket owing to the Central District's esoteric policies, almost uniform requirements for in-person appearances, and overnight mailing and filing requirements.

Sixth, the factors Freedom Forever argues for with respect to the location of documents do not apply with any force and weigh at worst neutrally. Under *Jumara*, a court should consider the location of books and records only to the extent that the files "could not be produced in the

alternative forum." *Jumara*, 55 F.3d at 879. As an initial matter, it should be noted that Freedom

Forever neglects to mention that some of the relevant documents here are also liable to be

located in Pennsylvania, Massachusetts, and New Jersey. Freedom Forever explains all the ways

it operates in California but fails to explain why that means the case must take place there,

suggesting it would inconvenience Freedom Forever to produce records unless this case is

transferred to California. But that does not follow. It neglects to mention that it has a satellite

office in Moorestown. Though Freedom Forever lists some document categories related to this

case as located in "databases" which may be in California, it does not explain why producing

those documents would proceed any differently if the case were in California rather than

Pennsylvania. Indeed, it never complains that it maintains only paper records, nor would that

make sense in 2024, especially given the need of regionalized offices to access information from

head office. Presumably, Freedom Forever digitizes its records in databases and will produce

them by email or file-share in discovery, as litigants do in every case. Freedom Forever has not

offered any evidence that its records would therefore be *unavailable*, let alone even a showing of

inconvenience, which itself is insufficient. *Franklin U.S. Rising Dividends Fund v. Am. Int'l

Grp.*, Inc., No. CIV.A. 2:13-05805 JL, 2014 WL 1555133, at *9 (D.N.J. Apr. 14, 2014).

On balance, because the *Jumara* private factors weigh in favor of the Plaintiff, not the

Defendant, and owing to the unique apparently regional nature of this class action dispute, the

Court should not grant transfer.

    **b. The *Jumara* public factors favor Pennsylvania and counsel against transfer.**

The *Jumara* public interest factors also disfavor transfer. Practical considerations favor

the Plaintiff. Administrative difficulty favors the Plaintiff. And local interests all favor the

Plaintiff. Not a single one of the *Jumara* public factors favors transfer here.

The first *Jumara* public factor, that of the enforceability of a judgment, weighs neutrally, since a judgment would be enforceable in either Pennsylvania or California. So too with the last *Jumara* public factor, that of familiarity with state law. As this is a federal question case, no questions of state law will be presented, thus causing these two factors to weigh neutrally.

As to the second *Jumara* public factor, practical trial considerations, this factor weighs in favor of Pennsylvania and against transfer. When evaluating this factor, "the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 48 (3d Cir. 1988). Here, as TCPA-specific case law makes clear, the locus of the conduct is in Pennsylvania, not California. Freedom Forever maintains offices just across the river in New Jersey, and its subsidiary is located in Massachusetts. Witnesses and documents from each of these locations are liable to be called at trial, in addition to Plaintiff, a Pennsylvania resident. Plaintiff's counsel is also a Pennsylvania resident.

Moreover, with respect to this factor, the Court must also consider the practicalities of proceeding in each forum. Significantly, the practicalities here weigh heavily against transfer. *Jumara*, 55 F.3d at 879. The Central District of California, one of the most congested courts in the country, is a venue where counsel is not licensed and will be forced to find and pay for local counsel at considerable expense, in addition to entering an appearance in a forum that limits appearances *pro hac vice*. Moreover, the Central District of California has some of the most onerous and esoteric procedural requirements with respect to handling of discovery in class action cases, discovery disputes, and motions practice. The Central District also has significant variation in rules from judge to judge, which can complicate case management. The Central District also requires courtesy copies of motions and other pleadings to be and physically

delivered by noon the following day, in blue-backed format, to the presiding judge, another

practical requirement that this Court lacks. It should also be noted that many judges in the

Central District do not permit telephonic or Zoom hearings, thus requiring counsel to take a six-

hour plane ride, each way, to California every time the court wants to hold a hearing on even a

mundane scheduling issue. These practical considerations make trial and motions practice in this

matter all the more difficult, onerous, slow, and expensive.

      The third *Jumara* public factor, the relative administrative difficulty and caseload of both

courts, weighs strongly against transfer. Mere caseload alone highlights the practical

consequences of the Central District of California's overly formalistic and esoteric practices,

which are unparalleled in the federal system. According to the Administrative Office of the

United States Courts, the Central District of California has 584 civil actions per judgeship, as

compared with this Court's relatively low 375. *Comparison of Districts*, ADMINISTRATIVE

OFFICE OF THE UNITED STATES COURTS, June 30, 2024,

https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2024.pdf.

And the average time from filing to disposition and trial are 30.4 months as compared to 27.1 –

taking 12% longer on average to permit the Plaintiff to seek justice, and imposing additional

burdens on a foreign district already struggling to manage.

      The fourth and fifth *Jumara* public factors also weigh against transfer. These factors are

intertwined with the private interest factor of where the claim arose. *LG Elecs., Inc. v. First Int'l

Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001). As explained above, the claim arose in

Pennsylvania, not California. Moreover, even though there are liable to be class members in

other states, this controversy is largely a regionalized controversy involving the receipt by a

Pennsylvania resident, and others in the area, of highly unlawful telemarketing communications,

including those they had requested to stop but did not. And Pennsylvania, specifically the Eastern District of Pennsylvania, enjoys a substantial public policy in giving a forum for individuals like Mr. Shelton aggrieved by the receipt of illegal telemarketing a forum to air their grievances and seek justice. Indeed, the location where the claim arose is a public interest factor because local judges and juries are preferred arbiters of events in their jurisdiction and community. *Id.* And while Freedom Forever says that its home turf has a greater interest in overseeing such disputes over illegal activity committed within its borders, that improperly places California's interest in protecting the legal interest of its citizens committing illegal activities over Pennsylvania's interest in protecting them. As a result, there is no reason to favor California's interest in governing this dispute when Freedom Forever resides in both states and Mr. Shelton resides only in Pennsylvania—the state where he and many other class members received Freedom Forever's unlawful calls.

Being that the *Jumara* public factors also counsel against transfer, the motion ought to be denied.

**c.  The demand for attorneys' fees is not improper and should not be dismissed.**

Defendant's motion to dismiss the Complaint's request for attorney's fees is unpersuasive and has been uniformly rejected by federal courts nationwide, including this one. The only reference to the collection of attorneys' fees comes in the Prayer for Relief, along with a request for class certification. That prayer requests "Attorneys' fees and costs, *as permitted by law*." (emphasis added). To be clear, Plaintiff only seeks an award of attorney's fees *in connection with any common fund associated with a class action judgment*. The Plaintiff does not contend that the TCPA is a fee-shifting statute. Instead, the request for attorneys' fees is appropriate because

this case is a class action, and the Court could award fees if the litigation ultimately resulted in a common fund benefiting class members.

As a threshold matter, Plaintiff notes that Freedom Forever has moved to dismiss this request for relief, rather than strike it. However, such a motion is not properly a motion to dismiss and is more properly styled as a motion to strike, and the Court should treat it as a motion to strike. In any event, Defendant cites nothing to dispute that Plaintiff is entitled to such a recovery *in the event of a class-wide judgment*. All the cases cited by the Defendant, save for one, were *individual actions* under the TCPA, a statute that admittedly does not contain a fee-shifting provision. But unlike those cases, the Plaintiff is proceeding in this matter *as a putative class action*, and therefore will be unquestionably entitled to an award of attorneys' fees out of the common fund in this action.

To that end, the sole class action case Defendant relies on, *Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325, 2016 WL 7380708, at *6 (E.D. Pa. Dec. 19, 2016), suffered from a pleading error, with the plaintiff there arguing that it may be "entitled to attorneys' fees under several different statutes and rules," without pleading conduct that would entitle plaintiff to recovery under any one of those statutes or rules. *Id.* To the contrary, in *Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356, 360 (E.D. Pa. 2017), decided after *Richardson*, this Court *approved* a TCPA class action settlement and noted that "[a]ttorneys who create a settlement fund for class members are entitled to reasonable compensation from that fund."

And, contrary to the Court's holding in *Richardson*, which nevertheless simply dismissed the claim for attorney's fees without prejudice until a later part of the litigation, another federal court recently outright *denied* a nearly identical motion at the pleadings stage. It held that, although the TCPA does not authorize attorneys' fees and costs, where a complaint brings claims

15

on behalf of a *putative class*, a request for attorneys' fees and costs from any future common fund is appropriate and should not be stricken. *Santiago v. Merriman River Assocs., LLC*, No. 3:17-CV-2054-VAB, 2018 WL 2465358, at *6 (D. Conn. June 1, 2018) (collecting cases and noting that, "By contrast, courts in this District have refused to strike fee requests in TCPA cases where a complaint states allegations on behalf of a putative class.")

There is no reason for the Court to reach a different result here. Plaintiff is not seeking the recovery of attorneys' fees in connection with his individual action, but rather only with regards to his class claims, and Defendant's motion to dismiss in this regard should be denied.

## CONCLUSION

For the reasons above, the Court should deny Freedom Forever's motion.

Dated: October 15, 2024

PLAINTIFF, individually and
on behalf of others similarly situated,

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

16

**CERTIFICATE OF SERVICE**

I certify that I served the above response on counsel for the Defendant through the CM/ECF system.

Dated: October 15, 2024

>   */s/ Andrew Roman Perrong*
>   Andrew Roman Perrong, Esq.
>   PA Bar #333687
>   Perrong Law LLC
>   2657 Mount Carmel Avenue
>   Glenside, Pennsylvania 19038
>   Phone: 215-225-5529 (CALL-LAW)
>   Facsimile: 888-329-0305
>   a@perronglaw.com