IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON,<br><br>   *Plaintiff,*<br><br>v.<br><br>FREEDOM FOREVER, LLC,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 24-4333 |

**Pappert, J.**                                    **March 4, 2025**

## **MEMORANDUM**

   James Shelton, the named plaintiff in this putative nationwide class action, sued Freedom Forever, LLC, alleging it violated the Telephone Consumer Protection Act by placing calls to phone numbers listed on the National Do-Not-Call Registry. Freedom Forever moves to partially dismiss Shelton's Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, transfer the case to the United States District Court for the Central District of California under 28 U.S.C. § 1404. The Court grants the transfer motion.

I

   Shelton filed this lawsuit on August 20, 2024, alleging, *inter alia*, that in August of 2022, May of 2024, and June of 2024, he received sales calls and texts from Freedom Forever. (Compl. ¶ 27–28, 32, ECF No. 1.) Because his phone number was listed on the National Do-Not-Call Registry, (*id.* at ¶ 25), he alleges each communication violated the TCPA. The Complaint alleges two counts of unwanted telephone solicitation, each respectively on behalf of the following purported nationwide classes: (1) all persons in

1

the United States whose phone numbers were listed on the National Do-Not-Call Registry and received more than one sales call from Freedom Forever, and (2) all persons in the United States who received more than one sales call from Freedom Forever after asking to be placed on its internal do-not-call list.  (*Id.* at ¶ 43.)

## II

A district court "may transfer the venue of any civil action for the convenience of parties and witnesses or in the interests of justice, to any other district where it might have been brought*.*" *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (citing 28 U.S.C. § 1404(a)).  Thus, in analyzing a motion to transfer under Section 1404, the Court must first determine "whether venue would be proper in the transferee district."  *Id.*  If so, the Court must then consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).

The burden of establishing that transfer is appropriate rests with the moving party.  *See id.* 879.  Although Freedom Forever bears that burden here, they are "not required to show 'truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'"  *Connors v. R & S Parts & Servs., Inc.*, 248 F. Supp. 2d 394, 396 (E.D. Pa. 2003) (cleaned up) (quoting *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001)).  In evaluating a motion to transfer for improper venue, "[a]ll well-pleaded allegations in the complaint are generally taken as true unless contradicted by the defendant's affidavits, and the Court may examine facts outside the complaint to determine proper

venue." *Holiday v. Bally's Park Place, Inc.*, No. 06-4588, 2007 WL 2600877, at *1 (E.D. Pa. Sept. 7, 2007). District courts are vested with "broad discretion" when determining whether transfer is appropriate. *Jumara*, 55 F.3d at 883.

## III

This action could have been brought in the Central District of California. Under 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." A business entity is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Here, Freedom Forever is incorporated, and maintains its principal place of business in, Temecula, California, located in the Central District of California. (Wysong Decl. ¶ 3, ECF No. 6-1.) California therefore has general personal jurisdiction over Freedom Forever, so venue is proper in the Central District. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (cleaned up).

## IV

The Court must next consider whether a transfer would be in the interests of justice. *See* 28 U.S.C. § 1404(a). "Courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors.'" *Jumara*, 55 F.3d at 879 (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3847 (4th ed. 2013)). The Third

Circuit Court of Appeals considers both public and private interest factors when deciding whether transfer is appropriate. *Id.*

A

The Court first considers the private interest factors, which are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *Jumara*, 55 F.3d at 879.

Starting with the first factor, the plaintiff's "choice of forum is [generally] entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendant['s] forum." *Blanning v. Tisch*, 378 F. Supp. 1058, 1060 (E.D. Pa. 1974) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). But "where there are hundreds of potential plaintiffs, . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947); *see also Rauhala v. Greater New York Mut. Ins., Inc.*, No. 22-1788, 2022 WL 16553383, at *2 (E.D. Pa. Oct. 31, 2022). In fact, named plaintiffs in TCPA class actions receive even less deference because such actions are "normally attorney driven and require limited participation from the named plaintiff for their individual claims or as class representatives." *Pierucci v. Homes.com Inc.*, No. 20-8048, 2020 WL 5439534, at *5 (D. Ariz. Sept. 10, 2020) (citation omitted); *see also Laguardia v. Designer Brands, Inc.*, No. 19-1568, 2020 WL 2463385, at *8 (S.D. Cal. May 7, 2020); *Newman v. Energy, L.P.*, No. 21-2446, 2023 WL 2914788, at *3 (D. Md. Apr. 12, 2023). Here, Shelton purports to

represent two classes consisting of "[a]ll persons in the United States," (Compl. ¶ 43), estimated at "hundreds of persons" nationwide who also allegedly received improper calls, (*id.* ¶ 44.)[1] Further, this is a TCPA action driven primarily by Shelton's counsel, reducing the amount of deference due his choice of forum.

The second private factor weighs in favor of transfer. Freedom Forever prefers the Central District of California because that is where it is incorporated and maintains its principal place of business. Though the defendant's preference is usually "entitled to considerably less weight than Plaintiff's," *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005), the minimal deference owed Shelton's choice tips the scales slightly in Freedom Forever's favor.

The Court next considers where the claims arose. *See Jumara*, 55 F.3d at 879. "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience," the plaintiff's choice of forum is given less weight. *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, No 07-0273, 2007 WL 4365328, at *5 (D.N.J. Dec. 11, 2007). Although Shelton resides in and received the unwanted calls in this district, he alleges nothing to suggest that a substantial portion of the nationwide class also received these calls in Pennsylvania. Freedom Forever, on the other hand, provided a signed declaration from its compliance support specialist stating that the "relevant

---

[1] In his response, Shelton claims Freedom Forever's calls were part of a "regionalized," rather than a nationwide, campaign, and that Freedom Forever has an office in Moorestown, New Jersey. (Resp. at 3–4.) He argues that "additional . . . discoverable records, as well as the parties and indeed most of the putative class members are liable to be concentrated along the Eastern Seaboard." (*Id.*)
   Shelton cannot have his cake and eat it too. He alleges a nationwide class, and the Court must accept that as true. He attaches no documents to either his Complaint or response suggesting the class is merely regional, or that Freedom Forever has a Moorestown office.

policies and practices were developed and implemented in Temecula, California." (Wysong Decl. ¶ 5.) Because the alleged injuries are diffused across the nation, and the policies in question were formulated and implemented in California, this factor militates in favor of transfer. *See Geraci*, 2019 WL 2574976, at *6.

The Court next must evaluate the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Because the purported class members are nationwide, and their role in the litigation would be minimal, their physical convenience does not impact the analysis. Meanwhile, Freedom Forever would be inconvenienced by the need for its employees and witnesses to defend a case on the opposite coast. Shelton responds that Freedom Forever is a corporation with "significant financial resources at its disposal," whereas he is an individual of modest means. (Resp. at 10, ECF No. 7.) While this is certainly true, Shelton is one of hundreds of purported plaintiffs, and the inconvenience to him from litigating this case in California would be slight in comparison. *See Geraci*, 2019 WL 2574976, at *6 ("As representative of a putative class action, Plaintiff will likely play only a minimal role in litigation, if any at all. On the other hand, Defendant will likely spend significant resources defending this suit."); *see also Rauhala*, 2022 WL 16553383, at *4. In any event, Shelton has filed four class action lawsuits in other district courts—two in New York, one in Colorado and one in Utah—which undermines his inconvenience claim. (Mot. for Transfer, Exs. B, C, D, E.) On balance, this factor supports transfer.

The next private interest factor—the convenience of witnesses—slightly supports transfer. *Jumara*, 55 F.3d at 879. Freedom Forever contends its executive team is based in California and there drafted the policies and practices relevant to this action.

6

(Wysong Decl. ¶¶ 4–5.) It also claims that the "majority of [its] key employees" are located around Temecula, (*Id.* ¶ 7), but it did not identify particular witnesses by name. *See LaGuardia*, 2020 WL 2463385, at *7; *Geraci*, 2019 WL 2574976, at *7. Nonetheless, the record suggests many key witnesses are located in the Central District of California, so this factor slightly favors transfer.

The final private interest factor—the location of the evidence—is neutral. Freedom Forever asserts that "[d]ocuments (both electronic and hard copy)," "[b]usiness records" and "transactional databases are located at Freedom Forever's headquarters in Temecula, California." (Wysong Decl. ¶ 6.) But Freedom Forever has not explained why its electronic records are not easily transferable to this district, nor why its physical records could not be digitized and transferred. *See Franklin U.S. Rising Dividends Fund v. Am. Int'l Group, Inc.*, No. 13-5805, 2014 WL 1555133, at *9 (D.N.J. Apr. 14, 2014) (finding the availability of documents factor neutral where "copies of many relevant documents could be readily available electronically").

Of the six private interest factors, one favors Shelton, four favor Freedom Forever, and one is neutral. Overall, the private interests weigh in favor of transfer.

B

The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that would make trial easy, expeditious or inexpensive; (3) the congestion of the courts' dockets; (4) the local forum's interest in deciding the case; and (5) the trial judge's familiarity with any state law. *Id.* The Court must assess all of these factors to "determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* (citing 15 Wright & Miller, *Federal Practice and Procedure* § 3847).

The first and fifth public interest factors are neutral because a judgment in the Eastern District of Pennsylvania is equally enforceable in the Central District of California and this is a matter of federal, not state, law.

The second factor—considerations that would make trial easy, expeditious or inexpensive—supports transfer. The Central District of California is more accessible and convenient for Freedom Forever's relevant policymakers, who, to the extent they are former employees, would be subject to compulsory process there. *See Rauhala*, 2022 WL 16553383, at *4. Further, "this action has been before the Court for a relatively short period of time and, thus, 'a transfer will not significantly disrupt the litigation or result in a waste of judicial resources.'" *Smith v. HireRight Sols., Inc.*, No. 09-6007, 2010 WL 2270541, at *9 (E.D. Pa. June 7, 2010). (quotation omitted).[2]

The third factor—congestion of the respective courts' dockets—is neutral. In resolving this factor, courts often look to statistics from the Administrative Office of the United States Courts.[3] *See, e.g., Tshudy v. Pennsylvania State Univ.*, No. 22-3336, 2022 WL 4225612, at *4 (E.D. Pa. Sept. 13, 2022). As of December 31, 2024, judges in the Eastern District of Pennsylvania, on average, had 436 pending cases while their counterparts in the Central District of California had 498, but the median time from

---

[2] Shelton repeatedly claims, without explanation, that the Central District of California has "esoteric" policies and procedures. (Resp. at 4, 10, 12 & 13.) Shelton also cites the "variation in rules from judge to judge" in the Central District. (Resp. at 12.) But, of course, there are also such variations in this district. And such variations have no impact on Shelton, whose case will be assigned to one judge.
    Finally, Shelton's counsel complains that he will have to take a "six-hour plane ride, each way, to California every time the court wants to hold a hearing on even a mundane scheduling issue." (Resp. at 13.) But the "convenience of counsel is not a factor to be considered" in a motion to transfer. *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1048 (3d Cir. 1973).

[3] *See* Admin. Off. U.S. Courts, U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (Dec. 31, 2024), https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf.

filing to disposition of civil actions in this district (4.8 months) exceeds that in the Central District (3.9 months). Both districts had nearly identical median times from filing to trial—28.3 months in the Eastern District of Pennsylvania versus 28.4 months in the Central District of California.

The fourth factor—the local forum's interest in deciding the case—weighs in favor of transfer. This factor often favors the district where the injury took place, but that effect is neutralized where the plaintiff brings a putative nationwide class action. *See Simpson v. J.G. Wentworth Co.*, No. 22-2911, 2023 WL 349251, at *8 (E.D. Pa. Jan. 19, 2023); *Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492, 502 (E.D. Pa. 2022). Thus, because the corporate defendant is based in the Central District of California, that forum has a greater interest in deciding this case.

Overall, two public interest factors favor transfer and three are neutral. In conjunction with the weight of the private interest factors, Freedom Forever has met its burden of showing that, "all relevant things considered, the case would be better off transferred to" the Central District of California. *Connors*, 248 F. Supp. 2d at 396.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.